UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES T. DEROSA; KATHLEEN DEROSA;
LOUIS J. DEROSA; MARY ELIZABETH
DEROSA,

                Plaintiffs,

vs.                         Case No.  2:08-cv-806-FtM-29SPC

KEVIN RAMBOSK, SHAUN M. GEORGE
and ANDREW W. ORCUTT,

                Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on the following motions
for summary judgment: (1) Defendant Sheriff's Motion for Summary
Judgment (Doc. #35); (2) Defendant Shaun M. George's Motion for
Partial Summary Judgment as to Counts V-VIII, IX, X, XIII, and XIV
(Doc. #36); and (3) Defendant Andrew E. Orcutt's Motion for Summary
Judgment as to Counts XX-XXIII (Doc. #37), all filed on March 3,
2010.  Plaintiffs filed Amended Responses (Docs. ## 57-59) on April
23, 2010.  The parties also filed affidavits, depositions, and
other exhibits in support of their respective briefs.

### I.

Summary judgment is appropriate only when the Court is
satisfied that "there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a matter of
law." Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is
sufficient evidence such that a reasonable jury could return a

verdict for either party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  <u>Id.</u>  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Hickson Corp. v. N. Crossarm Co.</u>, 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which is sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial.  <u>Celotex Corp.</u>, 477 U.S. at 322; <u>Hilburn v. Murata Elecs. N. Am., Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999).  If there is a conflict in the evidence, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007)(internal quotation and citation omitted).  "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." <u>Id.</u>

**II.**

Plaintiffs James DeRosa (James), Kathleen DeRosa (Kathleen), Louis J. DeRosa (Louis), and Mary Elizabeth DeRosa (Mary) filed a twenty-three (23) count Complaint (Doc. #1)[1] against Defendants Kevin Rambosk[2], in his capacity as Sheriff of Collier County, Deputy Shaun M. George (Deputy George), and Sargent Andrew Orcutt (Sgt. Orcutt).  The first eight counts set forth federal claims under 42 U.S.C. § 1983, while the next fifteen counts set forth state law claims.  The following summary judgment facts are either undisputed by the parties or the facts as viewed in the light most favorable to plaintiffs, as the non-moving parties:

On or about October 16, 2004, James DeRosa was driving a Chevrolet Yukon in which Kathleen, Mary, and Louis were passengers.

---

[1]Each of the twenty-three counts in the Complaint contain the following statement: "The allegations of paragraphs 1 through [ ] above are realleged as if fully set forth herein."  (See, e.g., Doc. #1, ¶¶ 54, 61, 67, etc.)  "The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions."  Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002); see also Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001); Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir. 1997).  To correct this pleading deficiency, at this late stage in the litigation, the Court will sua sponte strike incorporation of all paragraphs except paragraphs 1-46.

[2]Former defendant Don Hunter filed a Motion for Substitution of Party/Defendant (Doc. #24) and the Court entered an Order (Doc. #26) substituting Kevin Rambosk, current Sheriff of Collier County, Florida, for defendant Don Hunter, former Sheriff of Collier County.

(Doc. #57, p. 2.)  Louis was sitting in the front passenger seat, while both women were sitting in the back seat.  While James was driving on Randall Blvd. in Collier County, Florida, at about 6:45 p.m., he engaged his high beams for a short period of time.  (Id. at p. 3.)  At that time, Deputy George, in full uniform and driving a marked Collier County Sheriff's Office vehicle with proper insignia and lighting, was driving in the opposite direction on Randall Blvd.  Deputy George made a u-turn, activated the lights and sirens of his patrol vehicle, and made a traffic stop of plaintiffs' vehicle.  (Id.)

Deputy George approached the vehicle and asked James for his driver's license, vehicle registration, and proof of insurance. (Id.)  Plaintiffs described Deputy George as being very agitated, shaking, and nervously putting his hand on his gun.  Because James was wearing gym shorts and was driving Kathleen's vehicle, he had trouble locating the appropriate documents.  James asked Kathleen if she had his wallet, and she responded she did not.  James then started looking for the documents in the vehicle, and asked Kathleen where she kept them.  As Kathleen started to reply, Deputy George told her to shut up.  (Id.)  As James continued to look, Deputy George told Kathleen on two more occasions to shut up when she attempted to speak to James about the location of the documents.  (Id. at 3-4.)  Kathleen then told Deputy George, "You know, you really need to work on your community service skills,"

and said nothing more to him during the remainder of the traffic stop. (Id. at 4.)

Mary, also in the back seat, was upset and was "rambling" and "grumbling" to Kathleen about being stopped by a police officer. (Id.) Mary rambled and grumbled during the entire traffic stop, and Kathleen tried to keep her quiet and calm. (Id.)

Deputy George took the registration and proof of insurance (James could not find his driver's license), went back to his patrol vehicle, checked whether James had a valid Florida driver's license, determined that he did, and wrote a traffic citation for failure to dim headlights, in violation of Florida Statute § 316.238. (Id.) Deputy George returned to the plaintiffs' vehicle and handed James the citation book to sign, but no pen. (Id.) James signed the citation in pencil, and gave the ticket book back to Deputy George. (Id.) Deputy George gave James a copy of the ticket and his registration and proof of insurance. Deputy George returned to his own vehicle, and James pulled away from the shoulder and continued down the road.[3]  (Id. at 5.)

---

[3]Deputy George's version of the facts is different. He testified that Kathleen was talking in a loud manner, but he never sensed she was getting out of the vehicle. (Doc. #56-1, p. 50-55.) After returning with the ticket, Kathleen was making loud statements, making it difficult to converse with James. (Id. at 55.) This interfered with his investigation because the investigation would have been completed quicker if he did not have to stop and tell Kathleen she was interfering. Deputy George warned Kathleen that she could be arrested for obstruction. (Id. at p. 57.) Deputy George stated that it was against the law to
(continued...)

Deputy George immediately began a new pursuit of plaintiffs' vehicle, with his lights and sirens activated. Deputy George radioed his dispatcher that he was going to arrest the woman in the back of the vehicle for obstruction and that the vehicle was pulling away from him. Plaintiffs did not know why Deputy George wanted to pull them over again, but were afraid because Deputy George was acting aggressively, was shaking and jittery, and was swerving on the road behind them. James refused to pull over, and continued to drive the vehicle at a speed of 45-50 miles per hour. James asked Kathleen to call 911 for help, which she did. (Doc. #38-2, p. 32.) Kathleen reported to the 911 operator that they were being pursued by a Collier County Deputy, they were afraid to stop on the dark road, they would pull over at a specific gas station about two miles ahead, and stated that she would like to see lots of other officers there. (Id. at pp. 33-35.) The 911 operator advised Kathleen to pull over immediately, and that it was against the law not to do so. Deputy George contacted his supervisor, Sgt. Orcutt, and informed Sgt. Orcutt that he was involved in a vehicle pursuit, and gave the location, speed, and traffic conditions. Sgt. Orcutt authorized Deputy George to

---

[3](...continued)
talk during an investigation, since that could be construed as interfering with the investigation. James drove away before he had finished with the traffic stop, and was not free to go. (Id. at 74-75.) He was going to arrest Kathleen for obstructing an officer because she spoke as she did.

continue the low-speed pursuit of plaintiffs' vehicle. (Doc. #36, p.5.) Sometime during the pursuit, Deputy George learned that someone in the vehicle had called 911 and reported they were afraid of him.

James pulled the vehicle into the gas station as promised. Deputy George arrived, got out of his patrol car with his taser drawn, and ordered James out of the vehicle. James complied, and was handcuffed and placed in the back of Deputy George's patrol car. Deputy George asked another deputy to arrest Kathleen. That deputy asked Kathleen to step out of the vehicle, and she complied. Deputy George then approached Kathleen, grabbed her by the arm, and dragged her over to his patrol car, jammed her against the hood, handcuffed her, shoved her back into the car hood, and forcefully placed her in the back of another officer's patrol car. (Id. at p. 6.)

Mary had gotten out of the vehicle and was sitting at a picnic table at the gas station. An officer arrested her at the table, handcuffed and placed her into the back of the patrol car with Kathleen. Louis had also gotten out of the vehicle and asked permission to take the vehicle after the arrest of James and Kathleen. Louis was ultimately arrested for obstructing an officer, handcuffed, and placed in the back of the car with James. (Doc. #57, p. 8.)

James was arrested for fleeing and eluding in violation of Florida Statute § 316.1935(1); resisting a law enforcement officer

without violence in violation of Florida Statute § 843.02; and refusal to accept and sign a citation in violation of Florida Statute 318.14. James was issued citations for failing to dim headlights, failing to exhibit driver's license, and fleeing. James was denied bond as a flight risk. All criminal charges against James were subsequently dismissed by the State Attorney's Office, he pled guilty to refusal to sign, and was found guilty of not dimming his headlights.

Kathleen was arrested for resisting an officer without violence, in violation of Florida Statute § 843.02. The criminal charge was subsequently dismissed by the State Attorney's Office.

Mary was arrested for resisting an officer without violence, in violation of Florida Statute § 843.02. The criminal charge was subsequently dismissed by the State Attorney's Office.

Louis was arrested for obstructing an officer. No charges were ever filed against Louis.

**III.**

Counts V through VIII of the Complaint allege, pursuant to 42 U.S.C. § 1983, that Deputy George violated each plaintiff's Fourth, Fifth and Fourteenth Amendment rights in various ways during this course of these events. Count V alleges that Deputy George used unnecessary and excessive force, arrested without probable cause, illegally detained, and maliciously prosecuted James. Count VI alleges that Deputy George used unnecessary and excessive force,

arrested without probable cause, illegally detained, and maliciously prosecuted Kathleen.  Count VII alleges that Deputy George arrested, used unnecessary and excessive force and illegally detained Louis.  Count VIII alleges that Deputy George, arrested without probable cause, used unnecessary and excessive force, illegally detained and maliciously prosecuted Mary.  Deputy George asserts that there were no violations of plaintiffs' constitutional rights and that he is entitled to qualified immunity.

As discussed below, the only constitutional right implicated by the conduct in this case is the Fourth Amendment.  Summary judgment will be entered in favor of Deputy George as to all claims purportedly based upon the Fifth and Fourteenth Amendments.

**A.  General Legal Principles:**

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To establish a claim under 42 U.S.C. § 1983, plaintiffs must prove that (1) defendant deprived them of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law.  Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); United States Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).  In addition, plaintiffs must establish an affirmative causal connection between the defendant's conduct and the constitutional deprivations.  Brown v. City of Huntsville,

Ala., 608 F.3d 724, 737 (11th Cir. 2010); Marsh v. Butler County, 268 F.3d 1014, 1059 (11th Cir. 2001).

"Qualified immunity offers complete protection for government officials sued in their individual capacities when acting within their discretionary authority if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1305 (11th Cir. 2009) (internal citations and quotation omitted). The qualified immunity principles are well established. The government official must first show that he or she was engaged in a "discretionary function" when the allegedly unlawful act was committed. If this is shown, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. To do this, plaintiff must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the violation. Brown, 608 F.3d at 733-34; Mann, 588 F.3d at 1305; Corey Airport Servs., Inc. v. Decosta, 587 F.3d 1280, 1285 (11th Cir. 2009). A district court is permitted to exercise its sound discretion in deciding which of the two prongs should be addressed first. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009). Where, as here, there are claims against a Sheriff in his official capacity, the better procedure is to decide the two issues in the order listed above. Case v. Eslinger, 555 F.3d 1317, 1326 (11th Cir. 2009).

The parties do not dispute that Deputy George was acting within his discretionary authority. Therefore the Court will consider only whether plaintiffs have shown that qualified immunity is not appropriate.

## B.  Initial Stop of Vehicle:

A traffic stop of a motor vehicle is a "seizure" within the meaning of the Fourth Amendment, Delaware v. Prouse, 440 U.S. 648, 653 (1979), and both the driver and the passengers are "seized" within the meaning of the Fourth Amendment. Brendlin v. California, 551 U.S. 249 (2007). Therefore, a traffic stop "is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." Whren v. United States, 517 U.S. 806, 810 (1996).

A moving vehicle may be lawfully stopped in two circumstances. First, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810. This includes a stop of a vehicle based upon any of a multitude of civil traffic infractions, Whren, 517 U.S. at 811-19, including operating a motor vehicle with the high-beam lights on when there is traffic approaching. United States v. Banshee, 91 F.3d 99 (11th Cir. 1996). "A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains

reasonable, for the duration of the stop.  Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." Arizona v. Johnson, 129 S. Ct. 781, 788 (2009).

Second, a "law enforcement officer may conduct a brief investigative stop of a vehicle, analogous to a Terry-stop[4], if the seizure is justified by specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." United States v. Lopez-Garcia, 565 F.3d 1306, 1313 (11th Cir. 2009)(quoting United States v. Harris, 928 F.2d 1113, 1116 (11th Cir. 1991)).  If the stop of the vehicle is lawful as to the driver, it is also lawful as to all passengers.  See Johnson, 129 S. Ct. 781.  The Complaint quite properly does not allege that the initial stop in this case was unlawful.  James concedes he activated his high beam headlights before being stopped.  Deputy George observed the vehicle being operated on a roadway after sunset activate its high beam headlights while the vehicle was within 500 feet of his oncoming patrol vehicle.  This was a noncriminal traffic infraction punishable as a moving violation. Fla. Stat. § 316.238(1)(a), (2).  Deputy George was permitted by the Fourth Amendment to make a traffic stop for such a traffic infraction committed in his presence.  Whren, 517 U.S. at 811-19.

---

[4]Terry v. Ohio, 392 U.S. 1 (1968).

**C.   Probable Cause to Investigate:**

James and Kathleen allege that their constitutional rights were violated because Deputy George "was without probable cause when he engaged in an unlawful, unreasonable and arbitrary investigation" of them without their knowledge. (Doc. #1, ¶¶ 74, 83). If this is intended to refer to the initial vehicle stop, it is unsupported because Deputy George had probable cause of a traffic infraction when he conducted the traffic stop. If it refers to the subsequent activities, there was no violation of constitutional rights because an officer does not need probable cause to engage in a criminal investigation. Probable cause is needed to arrest, not to begin. Additionally, the evidence viewed in the light most favorable to plaintiffs does not establish an "unlawful, unreasonable and arbitrary" investigation. While the decisions to arrest all four occupants may have been unfounded as to some plaintiffs, a matter discussed below, nothing about the investigation itself was unlawful. Additionally, the Constitution does not require a suspect to be informed of an investigation. Therefore, Deputy George is entitled to summary judgment to the extent plaintiffs' claims rely upon this allegation.

**D.   Aggressive Behavior During Initial Traffic Stop:**

James and Kathleen allege that their constitutional rights were violated by Deputy George's "unreasonably aggressive behavior" during the routine traffic stop, which put them in fear for their

safety.  (Doc. #1, ¶¶ 75, 84.)  For summary judgment purposes, the Court takes plaintiffs' description of the events during the initial traffic stop as accurate.  From this perspective, Deputy George's behavior can fairly be characterized as rude and unnecessarily aggressive given the context, and reasonably resulted in apprehension by plaintiffs.  No constitutional rights, however, were violated.  While the Fourth Amendment provides restrictions on the interactions between law enforcement and citizens, it does not constitutionally require polite behavior or a steady demeanor by the police officer.  Deputy George's behavior, even if unprofessional, did not violate the Fourth Amendment or any other constitutional provision.  Therefore Deputy George is entitled to summary judgment to the extent plaintiffs' claims rely upon this allegation.

**E.  Second Stop of Vehicle:**

As noted above, "[a] traffic stop . . . is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion in accordance with <u>Terry</u> . . ."  <u>United States v. Spoerke</u>, 568 F.3d 1236, 1248 (11th Cir. 2009)(citation omitted).  The facts, viewed in the light most favorable to plaintiffs, can be summarized as follows:  Deputy George had completed the initial traffic stop and James was free to leave.  James resumed his travel, and Deputy George immediately began pursuit with lights and siren activated

and without any lawful cause to stop the vehicle again.  During this pursuit, Kathleen called the 911 dispatcher and was told they needed to stop the vehicle and that it was unlawful not to do so. Because he was afraid of the officer, James continued to refuse to stop the vehicle until he arrived at the gas station, where he stopped the vehicle.  While the parties focus on the lawfulness of the arrests, the initial question is the lawfulness of the stop.

There is no "seizure" within the meaning of the Fourth Amendment until the driver submits to the show of authority by stopping the vehicle.  California v. Hodari D., 499 U.S. 621, 626-28 (1991); Brendlin, 551 U.S. at 254.  Therefore, the question for constitutional purposes is whether the stop was lawful at the time the vehicle pulled into the gas station.

Two provisions of Florida law make it a criminal offense for the driver to refuse to stop a vehicle as directed by a law enforcement officer.  Pursuant to Florida Statute § 316.1935:

> (1) It is unlawful for the operator of any vehicle, having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such order or, having stopped in knowing compliance with such order, willfully to flee in an attempt to elude the officer, and a person who violates this subsection commits a felony of the third degree, . . .

> (2) Any person [operating a vehicle upon a street or highway in Florida] who willfully flees or attempts to elude a law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on

> the vehicle, with siren and lights activated commits a
> felony of the third degree, . . . ."

Fla. Stat. § 316.1935(1),(2).   A driver is required to stop
regardless of the lawfulness of the police decision to direct the
vehicle to stop.   State v. McCune, 772 So. 2d 596 (Fla. 5th DCA
2000).   Therefore, even if Deputy George had no valid reason to re-
stop the vehicle, James was required to stop when so directed by
the officer.   The failure to do so constituted a felony being
committed in Deputy George's presence.   Deputy George had both
reasonable suspicion under Terry and probable cause to stop the
vehicle.[5]   Thus, there was no constitutional violation as to any
plaintiff in stopping the vehicle for the second time.

## F.  Arrests of Plaintiffs:

While the stop of the vehicle and its occupants was lawful, it
is a separate question whether the arrest of each plaintiff was
lawful.   All plaintiffs assert that they were arrested without a
warrant and without probable cause, and illegally detained against
their will, in violation of their Fourth Amendment rights.   (Doc.
#1, ¶¶ 77, 78, 86, 87, 92, 94, 99, 100).   Deputy George argues that
he had probable cause, or at least arguable probable cause, to
arrest and detain each plaintiff.

--------

[5]In the arrest context, plaintiffs argue that they had an
affirmative defense which precluded the existence of probable
cause.   The Court disagrees, but discusses the matter in the next
section of this Opinion and Order.

The legal principles are well established.  "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).  "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest."  Brown, 608 F.3d at 734. "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."  Id.

"While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity.  We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause."  Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1137 (11th Cir. 2007).  In the context of a claim for a seizure based upon false arrest or detention, an officer is entitled to qualified immunity if he or she had "arguable probable cause."  Brown, 608 F.3d at 734.  "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same

knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Id. (citations and internal quotations omitted); see also Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006). "The [arguable probable cause] standard is an objective one and does not include an inquiry in to the officer's subjective intent or beliefs." Id. at 735.

"Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." Id. Arguable probable cause does not require proving every element of the crime charged. Id. Further, qualified immunity applies if the officer had arguable probable cause to arrest for any offense, not just the offense the officer articulated. Id.

### (1) James DeRosa

James DeRosa was arrested for fleeing and eluding in violation of Florida Statute § 316.1935(1), resisting a law enforcement officer without violence in violation of Florida Statute § 843.02, and refusal to accept and sign a citation in violation of Florida Statute 318.14. (Doc. #57, p. 9.) As discussed above, the Court finds that, viewing the facts in the light most favorable to plaintiffs, Deputy George had probable cause to arrest James for a violation of Florida Statute § 316.1935.

James relies upon an unpublished, and therefore non-binding, decision of the Eleventh Circuit for the proposition that he had an

affirmative defense to the failure to stop charge which eliminated the officer's probable cause.  Assuming the legal accuracy of that decision, the facts and circumstances of this case pale in comparison and do not fall within its holding.

In Williams v. Sirmons, 307 Fed. Appx. 354 (11th Cir. 2009), the Court adopted an exception to the rule established by the Supreme Court that in determining probable cause an arresting officer does not have to consider the validity of any possible defense.  The Court described the exception as follows:

> An exception to the general rule exists, however, when the arresting officer actually has knowledge of facts and circumstances conclusively establishing an affirmative defense. . . . We . . . agree that in determining whether probable cause to arrest exists, an officer must consider all facts and circumstances within that officer's knowledge, including facts and circumstances conclusively establishing an affirmative defense. [ ] That is, if an officer has knowledge of facts and circumstances which establish an affirmative defense, he or she lacks probable cause to arrest, even when the facts and circumstances establish that the person meets all elements of the offense.

Williams, 307 Fed. Appx. at 358-59 (citations omitted).  The Eleventh Circuit then noted that Florida recognized necessity or duress as an affirmative defense to a crime under Fla. Stat. § 316.1935, citing Rowley v. State, 939 So. 2d 298, 300 (Fla. 4th DCA 2006), and found that under the facts known to the officers, they should have known the defense was conclusively established.

The facts in Williams were compelling, and far different than those in this case.  Even assuming that Deputy George had been told all the facts upon which plaintiffs based their fear, it is clear

that these facts, like those in <u>Rowley</u>, would not rise to the level required to make out the defense.  <u>Rowley</u>, 939 So. 2d at 300. Probable cause to arrest James existed in this case, even when all of the facts, including those only known by plaintiffs, are considered.

Since Deputy George had probable cause to arrest James, there is no constitutional violation for his arrest and detention. Additionally, since there was probable cause for James's arrest for Florida Statute § 316.1935, the Court need not address whether Deputy George had probable cause or arguable probable cause to arrest and detain James on the other charges.  <u>Brown</u>, 608 F.3d at 735.  Deputy George is entitled to summary judgment as to any portion of the claims that relate to a Fourth Amendment violation based on James's arrest and detention.

**(2) Kathleen DeRosa**

Kathleen was arrested for resisting an officer without violence in violation of Florida Statute § 843.02.  (Doc. #57, p. 9.)  Deputy George asserts that Kathleen's talking during the initial traffic stop constituted a violation of § 843.02.  (Doc. #36, p. 12.)  Further, Deputy George alleges that since the windows of plaintiffs' vehicle were tinted he could not tell that it was Mary who was rambling in the backseat.  (<u>Id.</u> at p. 12 n.4.) Plaintiffs argue that Kathleen's words alone do not amount to obstruction, and thus Deputy George did not have probable cause, or

even arguable probable cause, to arrest her.   (Doc. #57, pp. 10-11.)

Florida Statute § 843.02 states that "[w]hoever shall resist, obstruct, or oppose any officer . . . in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, . . . ."   Fla. Stat. § 843.02.   "[T]o support a conviction for obstruction without violence, the State must prove: (1) the officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty."   C.E.L. v. State, 24 So. 3d 1181, 1185-86 (Fla. 2009).   An officer who is conducting a traffic stop for the purpose of issuing a citation is engaged in the lawful execution of a legal duty, satisfying the first element of the offense.   Davis, 451 F.3d at 764-65.   As to the second element, Davis stated that "Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under § 843.02", noting that Florida law held that "[w]ords alone may result in obstruction of justice where the officer in question is 1) serving process; 2) legally detaining a person; or 3) asking for assistance."   Id. at 765, 765 n.9 (citing Francis v. State, 736 So. 2d 97, 99 n.2 (Fla. 4th DCA 1999)).   Thus, while words alone may satisfy the statute, the issue is whether the words in this case did so, at least arguably.

The facts of this case clearly do not support a finding of probable cause for obstruction without violence.  Id. at 765-66. See e.g., J.G.D. v. State, 724 So. 2d 711, 711-12 (Fla. 3d DCA 1999)(holding police did not have probable cause to arrest defendant for obstruction despite defendant's "loud and profane" protests, and despite the gathering of an "unruly crowd"); State v. Dennis, 684 So. 2d 848, 849 (Fla. 3d DCA 1996)(holding police did not have probable cause to arrest defendant for obstruction when defendant was yelling street term "ninety nine" which means police were in the area while undercover officers were attempting drug bust of drug dealer); D.G. v. State, 661 So. 2d 75, 76 (Fla. 2d DCA 1995) (finding juvenile's verbal protests and refusal to answer officer's questions, unaccompanied by physical opposition or threats, did not constitute obstruction).

The issue in the qualified immunity context, however, is whether the facts support arguable probable cause.  To determine if Deputy George had arguable probable cause to arrest Kathleen, the Court looks only to whether a reasonable officer, knowing what Deputy George knew at the time, objectively could have believed probable cause existed.  Brown, 608 F.3d at 736.  The answer is clearly no.

Kathleen testified that during the traffic stop she said to Deputy George, "You know, you really need to work on your community service skills."  (Doc. #38-2, p. 20.)  As the cases collected in Davis show, Kathleen's statement to Deputy George, even when

coupled with his perception that she was the person who was "rambling" throughout the stop, fail to even come close to obstruction.  See Davis, 451 F.3d at 765-66.

Deputy George's testimony that it is unlawful for a person to talk during his traffic stop has probably never been the law, but certainly has not been the law since 1987.  In Houston v. Hill, 482 U.S. 451, 462 (1987), the Supreme Court struck down a city ordinance which prohibited speech that "in any manner . . . interrupt[s]" an officer, saying:  "The Constitution does not allow such speech to be made a crime.   The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."   Florida courts recognized that verbal statements far more offensive and challenging than Kathleen's were protected speech under Hill and could not constitute a violation of Florida Statute § 843.02.  S.D. v. State, 627 So. 2d 1261, 1262-63 (Fla. 3d DCA 1993).   The statements by Kathleen were less interruptive than those in Skop, 485 F.3d at 1138-40, about which the Eleventh Circuit "easily conclude[d] that a reasonable officer could not conceivably have thought that he had probable cause or even arguable probable cause to arrest . . ."  Similarly, these facts are less intrusive than in Davis, 451 F.3d at 766, which were also found to fail to establish even arguable probable cause.   The Court concludes that Deputy

George did not possess arguable probable cause to arrest Kathleen for violation of Fla. Stat. § 843.02.

Deputy George argues, in the alternative, that there was probable cause to arrest Kathleen for fleeing and eluding a law enforcement officer in violation of Florida Statute § 316.1395. (Doc. #36, p. 13.)  Deputy George argues that since Kathleen was the one who made the 911 call and advised the operator that the vehicle was not going to pull over until it reached the gas station, she "assisted the perpetrator of the crime" (Id. at 14) and therefore is criminally liable for aiding and abetting.  It is clear that Deputy George may now rely upon this offense even though it was not the offense for which he arrested Kathleen.  Knight v. Jacobson, 300 F.3d 1272, 1275 n.2 (11th Cir. 2002); Lee v. Ferraro, 284 F.3d 1188, 1195-96 (11th Cir. 2002).

The Court rejects Deputy George's argument that there was probable cause or arguable probable cause to arrest Kathleen for aiding and abetting James in fleeing and eluding a law enforcement officer.  Kathleen did not aid in the driving of the vehicle, had no control over the vehicle, and did not have the capacity to stop the vehicle and pull over.  Not surprisingly, Deputy George has cited no case where anyone in Florida has been convicted of aiding and abetting a person committing a criminal offense by calling the police.  And telling the police where they were going.  And stating that she would like to see more police officers meet them at the location.  "An aider and abettor participates in the same criminal

-24-

conduct as the principal, not conduct which is the antithesis of the principal's." Sobrino v. State, 471 So. 2d 1333, 1335 (Fla. 3d DCA 1985). No reasonable officer would even suspect that such conduct provided a basis to arrest a passenger. Deputy George therefore did not even have arguable probable cause to arrest Kathleen for fleeing and eluding a law enforcement officer, and Kathleen has established the violation of her constitutional right.

Kathleen has also satisfied the second step of the qualified immunity inquiry, since at the time of the arrest it was "clearly established that an arrest made without probable cause violates the Fourth Amendment." Davis, 451 F.3d at 764 n.8. Deputy George's motion for summary judgment is denied as to the portion of Count VI that relates to a Fourth Amendment violation for Kathleen DeRosa's arrest and detention.

### (3) Louis and Mary DeRosa

Although Deputy George appears to have moved for summary judgment on Louis DeRosa and Mary DeRosa's claim of unlawful detention, (Doc. #36, p. 2), he did not marshal any facts or law to show there was probable cause or arguable probable cause for their arrest and/or detention. (Id. at pp. 7-15.) Deputy George has therefore failed to carry his burden as to these plaintiffs. Additionally, an independent review of the record establishes no such probable cause or arguable probable cause. The Court will

deny the motion for summary judgment as to any portions of Counts VII and VIII relating to unlawful detention and arrest.

**G.  Excessive Force During Arrest:**

All plaintiffs allege that Deputy George used unnecessary and excessive force during their arrest, and recklessly disregarded their constitutional rights.  (Doc. #1, ¶¶ 76, 85, 93, 100.)  In his motion for summary judgment, Deputy George argues that the force used against plaintiffs was *de minimus* and does not support a claim for excessive force.

All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are analyzed under the Fourth Amendment and its objective reasonableness standard.  <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989); <u>Wilson v. Northcutt</u>, 987 F.2d 719, 722 (11th Cir. 1993).  "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." <u>Lee</u>, 284 F.3d at 1197.  When determining whether the force used to effect a seizure is reasonable for purposes of the Fourth Amendment, a court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests." <u>Graham</u>, 490 U.S. at 396.

"A law enforcement officer receives qualified immunity for use of force during an arrest if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." Brown, 608 F.3d at 738 (citations omitted).  This case-by-case determination is made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.  The use of force is judged solely on an objective basis, without consideration of the officer's subjective intent. Id.  A court evaluates several factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Id.

**(1) James DeRosa**

The Court has found that there was probable cause to arrest James for fleeing and eluding a police officer.  "A law enforcement officer's right to arrest necessarily carries with it the ability to use some force in making the arrest. [ ] For even minor offenses, permissible force includes physical restraint, use of handcuffs, and pushing into walls." Id. at 740 (citations omitted).

Viewing the facts in the light most favorable to plaintiffs, Deputy George threw James against the patrol car, handcuffed him, and placed him in a hot patrol vehicle.  (Doc. #1, ¶ 33.)  James

presents no evidence that he was injured as a result of the force used during the arrest.  The Court concludes that any force used by Deputy George was *de minimus* and not in violation of James' constitutional rights.  See Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002).  Accordingly, the Court grants summary judgment as to any portion of Count V relating to a Fourth Amendment violation for use of excessive force.

### (2) Kathleen DeRosa

According to Kathleen's testimony, Deputy George "grabbed [her] by the arm and shirt," "dragged" her because "[she] was off balance" and "jammed [her] back down into the hood" of his vehicle while he handcuffed her.  (Doc. #26, p. 17.)  Deputy George argues that this force was *de minimus* and that the Eleventh Circuit has sustained far more force in other contexts.  (Id.)

The Court has found there was no probable cause or arguable probable cause to arrest Kathleen.  "[E]ven *de minimis* force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect."  Brown, 608 F.3d at 738 n.21. However, "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim."  Bashir v. Rockdale County, Ga., 445 F.3d 1323, 1331 (11th Cir. 2006) (quoting Jackson v. Sauls, 206 F.3d 1156, 1171 (11th Cir. 2000)).  Kathleen's damages for unlawful arrest include damages suffered because of the use of

-28-

force in effecting the arrest.  Id. at 1332.  Therefore, Kathleen does not present a discrete excessive force claim, but one which is subsumed into and included within her unlawful arrest claim in Count VI.  With that understanding, summary judgment as to the excessive use of force is granted as to Kathleen's claim.

### (3) Louis DeRosa and Mary DeRosa

With regards to Louis's and Mary's excessive force claims, it is cannot be determined at this time if they present a discrete excessive force claim, since there was no evidence as to whether there was probable cause for their arrest.[6]  With that understanding, summary judgment as to the excessive use of force is denied as to Louis's and Mary's claims.

## H.  Malicious Prosecution:

Plaintiffs James, Kathleen, and Mary allege that Deputy George maliciously prosecuted them in violation of the Fourth Amendment. (Doc. #1, ¶¶ 78, 87, 101.)  Malicious prosecution can form a basis for a Fourth Amendment claim under § 1983.  Uboh v. Reno, 141 F.3d 1000, 1002 (11th Cir. 1998).  "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from

---

[6]The Court notes that Louis's and Mary's excessive force claims may be subsumed into and included with their unlawful arrest claims if it is determined that there was no probable cause for their arrest.

-29-

unreasonable seizures." <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1234 (11th Cir. 2004).   To establish the common law elements, plaintiff must establish each of six elements to support a claim of malicious prosecution under Florida law: "(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding." <u>Id.</u> at 1234.

A police officer who arrests a suspect but does not make the decision of whether or not to prosecute cannot be liable for malicious prosecution under § 1983.   <u>Eubanks v. Gerwen</u>, 40 F.3d 1157, 1160-61 (11th Cir. 1994).   There is no evidence that Deputy George was involved in the decision of whether or not any of the plaintiffs should be prosecuted.   Therefore, he is entitled to summary judgment as to the malicious prosecution component of the § 1983 claims.

## IV.

Plaintiffs also set forth state law claims, some of which are subject to Deputy George's summary judgment motion.

**A. Counts IX-XII: False Arrest**

Counts IX-XII allege that Deputy George falsely arrested James, Kathleen, Louis, and Mary.   Pursuant to Florida law, "[f]alse arrest is defined as the unlawful restraint of a person against that person's will. [ ] In a false arrest action, probable cause is an affirmative defense to be proven by the defendant." Willingham v. City of Orlando, 929 So. 2d 43, 48 (Fla. 5th DCA 2006).  Deputy George argues that since probable cause existed for plaintiffs' arrests he is entitled to summary judgement. Plaintiffs argue the contrary.

**(1) James DeRosa**

The Court has already found that there was probable cause to arrest James for fleeing and eluding a police officer.   Since probable cause is an affirmative defense to a false arrest claim, Deputy George's motion for summary judgment will be granted as to Count IX.

**(2) Kathleen DeRosa**

Since the Court found that there was no probable cause nor even arguable probable cause to arrest Kathleen DeRosa for obstruction without violence, the Court will deny Deputy George's motion for summary judgment as to Count X.

**(3) Mary and Louis DeRosa**

Deputy George did not move for summary judgment as to Mary and Louis DeRosa's false arrest claims.

**B. Counts XIII-XV: Malicious Prosecution**

Counts XIII-XV allege that Deputy George took James, Kathleen and Mary into custody, without benefit of a <u>Miranda</u> warning, and further filed charges against them maliciously and without probable cause.

"To state a cause of action for malicious prosecution, a plaintiff must allege the following elements: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding." <u>Cohen v. Corwin</u>, 980 So. 2d 1153, 1155 (Fla. 4th DCA 2008). To support a claim for malicious prosecution each element must be present. <u>Durkin v. Davis</u>, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002). A state law claim of malicious prosecution can be based upon an arrest without further prosecution. <u>Levine v. Hunt</u>, 932 So. 2d 1292, 1293 (Fla. 2d DCA 2006).

It is undisputed that criminal proceedings were instituted against plaintiffs, that Deputy George instituted the charges

against plaintiffs, and that those proceedings terminated in plaintiffs' favor.  (Doc. #36, p. 23.)  Deputy George argues that since probable cause existed for plaintiffs' arrests he is entitled to summary judgement.  Plaintiffs argue the contrary.

### (1) James DeRosa

In Count XIII James alleges that the incident report and charges made by Deputy George were malicious and the arrest was made without probable cause; that he was charged with Resisting Without Violence under Fla. Stat. § 843.02, Fleeing and Alluding under Fla. Stat. § 316.1935(1), and Refusal to Sign the citation under Fla. Stat. 318.14(3); and that all the criminal charges were later nolle prosequied by the State.

The Court has already found that there was probable cause to arrest and detention of James.  Since the there was probable cause for at least one offense for which James was arrested, James's malicious prosecution claim must fail.  <u>See</u> <u>Beizer v. Judge</u>, 743 So. 2d 134, 136-8 (Fla. App. 4th DCA 1999) (stating that the trial court granted summary judgment where it found probable cause for one of the charges brought).  Deputy George's motion for summary judgment will be granted as to Count XIII.

### (2) Kathleen DeRosa

In Count XIV Kathleen alleges that the incident report and charges made by Deputy George were malicious and the arrest was made without probable cause; that she was charged with Resisting

Without Violence under Fla. Stat. § 843.02; and that all the criminal charges were later nolle prosequied by the State.

The Court has found that there was no probable cause for Kathleen's arrest. Thus, the Court must address whether there was any malice on the part of Deputy George. Under Florida law, "the plaintiff need not allege actual malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause, gross negligence, or great indifference to persons, property, or the rights of others." Durkin, 814 So. 2d at 1248. In this case, the apparent lack of probable cause to arrest Kathleen for any offense provides sufficient evidence from which a jury could infer malice. See id. Thus, Deputy George's motion for summary judgment will be denied as to Count XIV.

**(3) Mary DeRosa**

Deputy George did not move for summary judgment as to Mary's state law malicious prosecution claim.

**V.**

Counts XX-XXIII are against Sgt. Orcutt and allege that he had a duty to intervene to avoid the violations of plaintiffs' constitutional rights, and as a result of his negligence and failure to intervene, James, Kathleen, Louis, and Mary were damaged. Sgt. Orcutt argues that he had no duty to intervene because he was never in a position to prevent the alleged violations of plaintiffs' constitutional rights. Plaintiffs'

-34-

assert, however, that Sgt. Orcutt's duty to intervene arose when Deputy George advised Sgt. Orcutt that he was in pursuit of plaintiffs' vehicle.

"[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998).  At the time that Deputy George advised Sgt. Orcutt that he was in pursuit of plaintiffs' vehicle, plaintiffs' vehicle was actively fleeing.  As the Court has found, Deputy George had probable cause to stop the vehicle and arrest James.  Therefore, Sgt. Orcutt violated no constitutional right by refusing to intervene.

"An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Hadley v. Gutierrez, 526 F.3d 1324, 1330 (11th Cir. 2008)(quoting Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir. 2007). The officer must be in a position to intervene, yet failed to do so.  Id. at 1331.  It is undisputed that Sgt. Orcutt was not present when James and Kathleen were arrested, (Doc. #59, p. 2), and therefore he had no duty to intervene.  Hadley, 526 F.3d at 1330-31.  Thus, the Court will grant Sgt. Orcutt's motion for summary judgment as to Counts XX and XXI.

The parties dispute whether Sgt. Orcutt was on the scene when Mary and Louis were arrested and whether he approved of the arrests of Mary and Louis.  (Doc. #59, p. 2.)  The Court concludes that these are disputes of material facts.  Therefore the Court will deny Sgt. Orcutt's motion for summary judgment as to Counts XXII and XXIII.

## VI.

Plaintiffs allege in Counts I-IV that the Collier County Sheriff's Office has "a policy and custom of failure to provide timely, appropriate and adequate oversight of deputies in the execution of their duties and have established a policy and custom of failure to administer adequate discipline for illegal conduct in the execution of law enforcement duties by deputies."  (Doc. #1, ¶ 48.)  In his summary judgment motion (Doc. #35) Kevin Rambosk, in his official capacity as the Sheriff of Collier County, maintains that plaintiffs' constitutional rights were not violated as a direct result of Collier County policies.

Under § 1983, a governmental entity may not be held liable under a theory of *respondeat superior*, but instead may only be held liable when its "official policy" causes a constitutional violation.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Plaintiff can establish the requisite "official policy" in one of two ways: (1) identifying an officially promulgated policy, or (2) identifying an unofficial custom or practice shown through

the repeated acts of the final policymaker of the entity.  <u>Grech v.</u>
<u>Clayton County, Ga.</u>, 335 F.3d 1326, 1320-30 (11th Cir. 2003).
Plaintiff must identify the policy or custom which caused his
injury so that liability will not be based upon an isolated
incident, <u>McDowell v. Brown</u>, 392 F.3d 1283, 1290 (11th Cir.
2004)(citations omitted), and the policy or custom must be the
moving force of the constitutional violation.  <u>Grech</u>, 335 F.3d at
1330.  <u>See also</u>, <u>Board of the County Comm'rs v. Brown</u>, 520 U.S.
397, 403 (1997); <u>Gold v. City of Miami</u>, 151 F.3d 1346, 1350 (11th
Cir. 1998).  "A policy is a decision that is officially adopted by
the municipality, or created by an official of such rank that he or
she could be said to be acting on behalf of the [entity]. . . . A
custom is a practice that is so settled and permanent that it takes
on the force of law."  <u>Cooper v. Dillon</u>, 403 F.3d 1208, 1221 (11th
Cir. 2005)(quoting <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488,
489 (11th Cir. 1997)).

     "Municipal policy or custom may include a failure to provide
adequate training if the deficiency evidences a deliberate
indifference to the rights of its inhabitants.  [ ]  To establish
a city's deliberate indifference, a plaintiff must present some
evidence that the municipality knew of a need to train and/or
supervise in a particular area and the municipality made a
deliberate choice not to take any action."  <u>Lewis v. City of West</u>
<u>Palm Beach, Fla.</u>, 561 F.3d 1288, 1293 (11th Cir. 2009) (internal
citations and quotations omitted).  Plaintiffs can show the entity

was deliberately indifferent by either showing that (1) the city was aware of a pattern of constitutional violations and nevertheless failed to provide adequate training or (2) the likelihood of constitutional violation was so high that the need for training was obvious.  <u>Id.</u>

In this case, the plaintiffs allege that there was a custom of inappropriate oversight, training and discipline of deputies.  As evidence of this custom, plaintiffs point the fact that the Sheriff knew of their claims as early as June 23, 2005, but none of the deputies involved "know the applicable statutory law or legal standards to determine probable cause for the violations charged" at their depositions years later.  (Doc. #58, p. 4.)

**(1) Count I: James DeRosa**

Since the Court has determined that Deputy George's conduct toward James DeRosa was constitutionally permissible, there can be no policy or custom that officially sanctioned or ordered a constitutional violation.  <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1243 n.13 (11th Cir. 2003); <u>Rooney v. Watson</u>, 101 F.3d 1378, 1381 (11th Cir. 1996); <u>Vineyard v. County of Murray</u>, 990 F.2d 1207, 1211 (11th Cir. 1993).  Therefore, the Sheriff of Collier County is entitled to summary judgment as to Count I.

**(2) Counts II-VI: Kathleen, Louis and Mary DeRosa**

Kathleen, Louis and Mary DeRosa allege that their arrest, detention, imprisonment and malicious prosecution were directly

attributable to Sheriff Rambosk's custom and policy of inadequate
oversight and discipline of his deputies in the execution of their
law enforcement duties.   (Doc. #1, ¶¶ 55-70.)   Sheriff Rambosk
argues that plaintiffs' constitutional rights were not violated as
a direct result of any policy, custom or practice.   (Doc. #35, pp.
7-8.)  Further, Sheriff Rambosk argues that insofar that plaintiffs
are making a failure to train claim, there is no evidence of a need
to train as it related to probable cause or use of force.   (Id. at
9.)

     Plaintiffs must point to a policy or custom that caused their
constitutional violations.   To demonstrate the Sheriff's Office had
a custom of inadequately training its deputies, plaintiffs point to
the testimony of Deputy George that he thought the obstruction
charge was justified because Kathleen DeRosa's disturbance hindered
his investigation.   (Doc. #58, p. 6.)   While it may be true that
Deputy   George   did   not   fully   comprehend   what   constitutes
obstruction, the record provides no evidence that any significant
portion   of   the   Collier   County   Sheriff's   department   has   no
comprehension of what constitutes probable cause under Florida
Statute § 843.02, nor have Plaintiffs pointed to another occasion
when the failure to fully understand what constitutes obstruction
without violence contributed to a constitutional violation.   The
evidence does not demonstrate a "persistent and wide-spread
practice" sufficient to demonstrate a policy or custom.   See
McDowell, 392 F.3d at 1290-91.   Thus, plaintiffs have failed to

show that there was a custom or practice of inadequate training regarding probable cause.

Additionally, plaintiffs have not presented sufficient evidence that the Collier County Sheriff was deliberately indifferent.  Plaintiffs have failed to show any evidence that there was a pattern of constitutional violations or that the likelihood that an officer would effect an arrest for obstruction without violence without probable cause was so high that the need for training was obvious.  Thus, the Court will grant Sheriff Rambosk's motion for summary judgement as to Counts II-IV.

Accordingly it is now

**ORDERED**:

1. Defendant Sheriff's Motion for Summary Judgment (Doc. #35) is **GRANTED.**  Summary judgment will be entered in favor of Kevin Rambosk, as Sheriff of Collier County, Florida, on Counts I, II, III, and IV of the Complaint (Doc. #1).

2.  Defendant George's Motion for Partial Summary Judgement (Doc. #36) is **GRANTED IN PART AND DENIED IN PART** as follows:

(A)  Summary judgment will be entered in favor of Shaun M. George as to Count V, Count IX, and Count XIII in their entirety.

(B)  Summary judgment will be entered in favor of Shaun M. George as to Count VI as it relates to use of force and malicious prosecution under Section 1983.

(C) Summary judgment will be entered in favor of Shaun M. George as to Count VIII as it relates to malicious prosecution under Section 1983.

(D) The motion is otherwise **DENIED**.

3.  Defendant Orcutt's Motion for Summary Judgment (Doc. #37) is **GRANTED** as to Counts XX and XXI; and **DENIED** as to Counts XXII and XXIII.

4. The **Clerk** shall enter judgment as to Defendant Sheriff as provided by Paragraph 1, but shall otherwise withhold the entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___11th___ day of August, 2010.


                                        _____
                                        JOHN E. STEELE
                                        United States District Judge



Copies: Counsel of record